UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMIE C. GREEN, <br> # 151209, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | No. 3:17-cv-01363 <br> Judge Trauger |
| v. | ) <br> ) | |
| TONY C. PARKER, *et al.*, | ) <br> ) | |
| Defendants. | ) | |

# **M E M O R A N D U M**

Jamie C. Green, an inmate of the Bledsoe County Correctional Center in Pikeville, Tennessee, filed this *pro se, in forma pauperis* action under 42 U.S.C. § 1983 against Tony C. Parker, Darren Settles, Doug Lawhorn, f/n/u Bendal, K. Miller, B. Kidd, and Leonard Attaway, alleging violations of the Plaintiff's civil rights. (Docket No. 1).

The plaintiff's complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b).

1

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**II.    Section 1983 Standard**

The plaintiff brings his complaint pursuant to 42 U.S.C. § 1983.    Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, a plaintiff must allege and show two elements:  (1) that he was deprived of a right secured by the

2

Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

### III.  Alleged Facts

The complaint alleges that, on December 31, 2016, the plaintiff was taken into custody in Davidson County, Tennessee. While in the custody of the Metropolitan Government of Nashville and Davidson County Sheriff's Office, the plaintiff was denied his mental health medication on during the period January 1-12, 2017. The plaintiff was released on January 12, 2017, but was "so off schedule" of his mental health medications that he did not remember who he was, where he was, or what he needed to do to take care of himself. (Docket No. 1 at 8). The plaintiff then attempted to kill himself by running out in front of traffic on the interstate. (*Id.* at 8-9).

On February 16, 2017, parole officer Leonard Attaway "put a warrant out on [the plaintiff] for a parole violation." (*Id.* at 9). The plaintiff learned about this action through the Institutional Probation/Parole Officer (IPPO). The plaintiff was taken into the custody of the Metropolitan Government of Nashville and Davidson County Sheriff's Office for the parole violation on June 22, 2017. (*Id.*) Bendall "forced himself" on the plaintiff "as a representative and coerced" the plaintiff to waive his right to a probable cause hearing. (*Id.*)

The complaint alleges that the plaintiff was never permitted to see a magistrate after his arrest and this denial violated the plaintiff's Fourteenth Amendment rights. (*Id.* at 14). The complaint also alleges that defendants Settles, Kidd, Parker, Lawhorn, Bendall, and Miller knew of the violations of the plaintiff's rights under the Thirteenth and Fourteenth Amendments of the United States Constitution and failed to act for the plaintiff's benefit. (*Id.* at 15). The complaint additionally alleges that the plaintiff wrote Parker a letter informing Parker of the Plaintiff's

allegations and Parker did nothing to help the plaintiff; that Settles "is responsible for the operation of BCCX"; and that Kidd, Chief of Security at the Davidson County jail, created a policy allowing the staff to violate the fourteenth Amendment due process . . . and 13th Amendment." (*Id.* at 16).

## IV. Analysis

### A. Claims about the lack of inmate programs at the jail

The complaint alleges that Tennessee Department of Corrections inmates who are housed at the Davidson County Sheriff's Department jail do not have the opportunity to participate in certain educational or rehabilitative programs while incarcerated. However, prisoners have no constitutionally cognizable right to participate in rehabilitative or educational programs. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989); *Kenner v. Martin*, 648 F.2d 1080, 1081 (6th Cir. 1981)(*per curiam*); *Carter v. Corrs. Corp. of Am.*, No. 98-6336, 1999 WL 427352, at *1 (6th Cir. June 15, 1999). Thus, as to these allegations, the complaint fails to state an Eighth Amendment claim upon which relief can be granted, and that claim must be dismissed.

### B. Medical and mental health care claims

Next, the complaint alleges that "Metropolitan Government of Nashville and Davidson County Sheriff's Office employees" failed to provide the plaintiff with appropriate treatment and medication for his mental health needs while he was an inmate of the Davidson County Sheriff's Department. (Docket No. 1 at 14). Specifically, the complaint alleges these as-yet identified defendants deprived the plaintiff of his mental health medication for a period of twelve days and that his lack of mental health treatment during that time period resulted in the deterioration of the plaintiff's mental health and contributed to the plaintiff's suicide attempt shortly after release from

4

the jail.

Failure to provide medical care, including care for mental health conditions, may give rise to a violation of a prisoner's rights under the Eighth Amendment. The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." *Id.* (quoting *Farmer*, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Complaints of malpractice or allegations of negligence are insufficient to entitle plaintiff to relief. *Estelle*, 429 U.S. at 105-06. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Id.* at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Finally, to set forth a viable claim for the denial of medical care, the plaintiff must argue that his health suffered as a consequence of such alleged denial. *See Thaddeus-X v. Blatter,* 175 F.3d 378, 401 (6th Cir. 1999).

Here, the complaint alleges that the as-yet identified defendants failed to treat the plaintiff's mental health needs. For purposes of the required PLRA screening, the court finds that the problems resulting from the denial of the plaintiff's mental health medication for nearly two weeks constitute a sufficiently serious medical need. *See Rouster*, 749 F.3d at 446. As to the defendants' state of mind, the complaint alleges that the defendants provided no mental health treatment to the plaintiff for nearly two weeks, despite his request to receive his mental health medication. In addition, when the defendants released the plaintiff from custody, the plaintiff could not remember who he was, where he was, or how to take care of himself and attempted suicide within weeks of his release. The court finds that these allegations, "if true, would show that the official[s] being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [they] did in fact draw the inference, and that [they] then disregarded that risk." Id. Consequently, the court finds that the complaint sets forth non-frivolous Eighth Amendment claims against the as-yet identified "Metropolitan Government of Nashville and Davidson County Sheriff's Office employees" based on the inadequacy of mental health treatment with regard to the incident in question.

Although designation of "John Doe" or "Jane Doe" defendants is not favored, it is permissible when the defendants' identities are not known at the time the complaint is filed, but may be determined through discovery. *See Berndt v. Tennessee*, 796 F.2d 879, 882-84 (6th Cir. 1986). The court concludes that it would be inappropriate to dismiss the claims against the John or Jane Doe defendants at this juncture because of the likelihood that the identities of these defendants will be determined during discovery.

### C. Intervention in ongoing state criminal or parole proceedings

The complaint alleges that the plaintiff was deprived of his Fourteenth Amendment due process rights when he was not permitted to go before a magistrate when state criminal charges were brought against him. (Docket No. 1 at 10). The complaint asks the court to enter an injunction ordering the reinstatement of the plaintiff's parole. (Id. at 23).

To the extent that the complaint asks the court to intervene in pending state criminal proceedings, the law is well-settled that a federal court should not interfere with pending state court criminal proceedings, absent the threat of "great and immediate" irreparable injury. *Younger v. Harris*, 401 U.S. 37, 46 (1971). *Younger* abstention applies where the federal plaintiff seeks injunctive or declaratory judgment relief. *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998). The burden on a plaintiff is high, and the allegations of the instant complaint do not suggest that any exception to the *Younger* doctrine is warranted in this case at this time.

**D.** *Heck* **claims**

Although the complaint does not ask for the plaintiff's release from custody, the complaint alleges that the plaintiff should have been brought before a magistrate in connection with state criminal charges and that the failure to do so resulted in a violation of the plaintiff's federal due process rights and right to be free from slavery under the Thirteenth Amendment. (Docket No. 1 at 14). In other words, the complaint attacks, at least in part, the validity of the plaintiff's current confinement.

The law is well established that "habeas corpus is the exclusive remedy for a state prisoner who challenges **the fact or duration of his confinement** . . . even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994)(citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973))(emphasis added). A § 1983 claim challenging

7

confinement must be dismissed even where a plaintiff seeks only injunctive or monetary relief. *Heck*, 512 U.S. at 489-90 (claim for damages is not cognizable); *Preiser*, 411 U.S. at 488-90 (claim for injunctive relief is only cognizable under 28 U.S.C. § 2254). Additionally, a state prisoner does not state a cognizable claim under § 1983 where a ruling on his claim would imply the invalidity of his conviction and/or confinement, unless and until the conviction has been favorably terminated, *i.e.*, reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of *habeas corpus*. *Heck*, 512 U.S. at 486-87; *Ruff v. Runyon*, 258 F.3d 498, 502 (6th Cir. 2001). More recently, the United States Supreme Court extended *Heck* to bar § 1983 actions that do not directly challenge confinement, such as here, but instead challenge the procedures that imply unlawful confinement. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).

Under *Heck*, the court cannot grant the relief requested by the plaintiff. The plaintiff's claims concerning the validity of his sentence, his continued confinement, and his complaints against the quality of his lawyer's or IPPO representative's representation would be more appropriately brought in a separate petition for writ of *habeas corpus*, not in a civil rights complaint. Those claims will be dismissed without prejudice, should the plaintiff wish to pursue them via the appropriate legal route.

### E. Supervisor liability and inaction claims

The complaint alleges that defendants Settles, Kidd, Parker, Lawhorn, Bendall, and Miller knew of the violations of the plaintiff's rights under the Thirteenth and Fourteenth Amendments of the United States Constitution and failed to act for the plaintiff's benefit. (Docket No. 1 at 15). The complaint additionally alleges that the plaintiff wrote Parker a letter informing Parker of the

8

Plaintiff's allegations and Parker did nothing to help the plaintiff; that Settles "is responsible for the operation of BCCX"; and that Kidd, Chief of Security at the Davidson County jail, created a policy allowing the staff to violate the Thirteenth and Fourteenth Amendments. (*Id.* at 16).

A supervisory official, who is aware of the unconstitutional conduct of his subordinates but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). A failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

The complaint does not allege that Settles, Parker, Lawhorn, Bendall, or Miller was directly responsible for any of the alleged violations of the plaintiff's Thirteenth and Fourteenth Amendment rights. Parker cannot be held liable under § 1983 for failing to respond to the plaintiff's letter any more than Settles can be held liable for the acts of his subordinators without any implicit authorization, approval, or knowing acquiescence of the unconstitutional conduct of the offending party. Although the complaint alleges that Kidd "created a policy allowing" his staff to violate the plaintiff's Thirteenth and Fourteenth Amendment rights, the complaint fails to identify the policy or explain in what way the policy was the moving force behind the violation of the plaintiff's constitutional rights. Consequently, the complaint fails to state § 1983 supervisory liability claims

upon which relief can be granted as to defendants Settles, Parker, Miller, Bendall, Lawhorn, and Kidd.

F.  **Retaliation claims**

The complaint alleges that, in response to the plaintiff filing a grievance about the alleged violation of his due process rights, defendant Miller retaliated against the plaintiff by "shipping" the plaintiff. (Docket No. 1 at 16).

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X*, 175 F.3d at 388. Filing grievances through an inmate grievance process is protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). To establish a prima facie case of retaliation within the context of § 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id.* at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than *de minimis* harm resulting from it. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X*, 175 F.3d at 396.

The complaint specifically alleges that Miller retaliated against the plaintiff by "having [him] shipped." (Docket No. 1 at 15). As the court understands it, having the plaintiff "shipped" means having the plaintiff transferred to another facility. However, even if this allegation is true, inmates have no constitutional right to be confined in any particular jail or prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)(superseded by statute

10

on other grounds); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). Because the plaintiff does not have a constitutional right to be housed at any particular facility, he cannot state a viable retaliation claim under § 1983 based on any defendant's role in transferring the plaintiff from one facility to another. In any event, the court finds that the complaint's allegations are either lacking in specificity or fail to allege even *de minimis* harm resulting from the claimed retaliatory act. *See Ingraham*, 430 U.S. at 674 (1977); *Thaddeus-X*, 175 F.3d at 396. Consequently, the court finds that the complaint fails to state a colorable retaliation claim against Miller, and any such claim will be dismissed.

### G. Thirteenth Amendment/ Sovereign Citizen claims

The complaint alleges that the plaintiff is not "Black" and is not a citizen of the State of Tennessee or of the United States; instead, the plaintiff is 'sovereign' and not a sovereign citizen." (Docket No. 1 at 17). The complaint continues: "I am simply exercising my 13th Amendment right, rights of indigenous peoples are our unalienable rights endowed by the Creator." *(Id.* at 18). The plaintiff claims that he is an "indigenous Aboriginal free Moorish American sovereign national with the inalienable right at birth to a name and a nationality." *(Id.* at 19). The complaint attempts to use these allegations to support a claim under the Thirteenth Amendment: "The claim of the 13th Amendment of the United States Constitution to abolish all entities of slavery (slaves, slave masters and slave names e.g. Negro, Black and Colored)." *(Id.* at 12).

The Thirteenth Amendment expressly provides that slavery and involuntary servitude are prohibited "except as punishment for crimes whereof the party shall have been duly convicted." U.S. Const. amend. XIII. To the extent that the complaint contends that the plaintiff's state criminal charges or conviction are unconstitutional because the State of Tennessee has no jurisdiction over

11

him as a "sovereign," the court finds the contention patently frivolous. The arguments raised by the plaintiff are common among those who are adherents of the "sovereign citizens" movement. *See White v. Tennessee*, No. 2:14-CV-115, 2014 WL 3908203, at *4 (E.D. Tenn. Aug. 11, 2014)(citing *Santiago v. Century 21/PHH Mortgage*, 2013 WL 1281776, at * 3–4 (N.D. Ala., March 27, 2013)). The Second Circuit has described the movement as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa*, 51 Fed. App'x 105, 106 n.1, 2013 WL535776 (2d Cir. Feb. 14, 2013); *see Gravatt v. United States*, 100 Fed. Cl. 279 (2011) ("so-called sovereign citizens believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings."); *Colar v. Heyns*, No. 1:12-cv-1269, 2013 WL 141138, at *3 (W.D. Mich. Jan.11, 2013) ("The 'sovereign citizen movement' is well documented. The Federal Bureau of Investigation has classified 'sovereign citizens' as domestic terror threats because they are anti-government extremists."). Consequently, insofar as the complaint might be construed as asserting that the plaintiff's constitutional rights were violated because he is a sovereign over whom the State of Tennessee lacks jurisdiction, the complaint fails to state a colorable claim for which relief may be granted under § 1983 or any other law. Any other claims raised in the complaint with regard to the plaintiff's contention that he is a sovereign Moor fail to state claims upon which relief can be granted under § 1983.

**V.     Conclusion**

In conclusion, the court has reviewed the complaint pursuant to the PLRA and finds that the complaint states colorable Eighth Amendment claims pursuant to § 1983 against the as-yet identified

12

Metropolitan Government of Nashville and Davidson County Sheriff's Office employees based on the inadequacy of mental health treatment for the plaintiff. 28 U.S.C. § 1915A. These claims survive the required PLRA screening and will proceed to further development. The court concludes that it would be inappropriate to dismiss the complaint against the "John Doe" and "Jane Doe" defendants at this juncture because of the likelihood that the identities of these defendants will be determined during discovery.

The Plaintiff's remaining claims against all other defendants fail to state claims upon which relief can be granted, and those claims will be dismissed. This dismissal is without prejudice to the plaintiff's ability to pursue *habeas corpus* relief.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge